Allen, J.,
 

 dissenting. I am compelled to dissent from the conclusions of the majority in this case.
 

 The record shows that prior to the passage of the ordinance by the city council of Fremont, which provided for the issuance of bonds of the city to pay the expense of installing a- filtration plant— namely, upon June 28, 1926 — the electors of the city of Fremont filed an initiative petition to submit to the voters an initiative ordinance providing for the issuance of bonds for the purpose of drilling and equipping deep water wells for the water supply of the city of Fremont. This initiative ordinance was duly submitted to vote at a general election in accordance with law, and passed by the electors upon November 2, 1926. Upon June 29, 1926, after the filing of the initiative petition, but prior to the enactment of the initiated ordinance, the council of the city of Fremont passed the ordinance in question, declaring the ordinance
 
 *473
 
 an emergency measure, providing for a filtration plant, and for the issuance of bonds. Upon August 3, 1926, the city council passed another ordinance, as an emergency measure, authorizing and directing the director of public service of the city of Fremont to advertise for bids and to enter into a contract for the construction of the plant in question. The enactment by council of the filtration ordinance subsequent to the filing of the initiative petition was therefore deliberate. It was taken with knowledge upon the part of the council members that an initiative petition had been filed, providing for a deep well system instead of a filtration plant, and in defiance of the possible enactment of that ordinance by the voters. This action therefore showed the hostility of the council to the will of the people of Fremont, as it might be and in fact was afterwards expressed in November, upon the question as to what system of water supply should be established in the city.
 

 In an amended and supplemental petition filed by the relator the ordinance so initiated was se1 out in full, and a resolution passed by the city council subsequent to the enactment of the initiated ordinance, ordering the issuance of the bonds for the filtration plant, and the selling of the bonds to the Industrial Commission, was also set out in full. The petition alleges that the passage of the initiative ordinance upon November 2, 1926, subsequent to the passage of the ordinance of council providing for the filtration plant, and directly conflicting therewith by providing for a deep well water system, repealed the ordinance providing for the filtration plant, and prays for a writ of mandamus
 
 *474
 
 ordering the council to carry out the provisions and terms of the initiated ordinance, and also prays for an injunction against the issuance and selling of the city bonds and against the execution of a contract for the construction of a filtration plant.
 

 The answer of the respondents need not be quoted for the purposes of this dissent, except to say that the gist of the defense is that the initiated ordinance of the electors, passed upon November 2, 1926, had no effect in repealing the ordinance of council passed June 29, 1926. It is upon this specific proposition that the
 
 per curiam
 
 majority opinion is based.
 

 The decision of the majority that municipal electors have no right under the Ohio Constitution to initiate an ordinance, upon a subject upon which the council of the city has previously acted, inconsistent with the council ordinance, ignores the fact, disclosed by .the record, that the initiative petition was filed before the council ordinance was passed. The electors surely were within their rights in filing the initiative petition at the time they did, and at that time, irrespective of the effect of the decision in
 
 State ex rel. Durbin
 
 v.
 
 Smith, Secretary of State,
 
 102 Ohio St., 591, 133 N. E., 457, which will be discussed later, there was no enacted ordinance in being upon which a referendum could have been filed. Upon the record as it stands, therefore, this court is in the position of holding that if an ordinance is pending in council, which as a matter of fact may never be enacted, the electors cannot act upon the same subject by initiative petition. From the broader standpoint of the principles involved,
 
 *475
 
 however, I prefer not to ground my dissent upon that point alone, and wish to discuss the general doctrine announced by the majority opinion.
 

 The
 
 per curiam
 
 states that the filing of the initiative petition was an effort to nullify the actior of the city council in the ordinance upon the construction of a filtration plant, and that the onlj method by which this legislation can be annulled is by a referendum. The majority of the court hold that initiative legislation cannot be used as a substitute for the referendum, and that legislative action cannot be repealed by the initiative, as in a referendum. In other words, the majority of the court limit the subjects upon which the electors of a city can take initiative legislative action to subjects which have not already been handled in an opposite way by council.
 

 The constitutional provision under which the initiative and referendum power is reserved to municipalities is found in Article II, Section 1/, which reads as follows:
 

 “The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law. ’ ’
 

 It may be conceded that the initiated ordinance does directly conflict with the ordinance passed bj council upon June 29, 1926. It dealt with the whole subject-matter of the council ordinance; namely, with the water system of the city of Fremont, and was evidently intended as a substitute for the councilmanic enactment.
 

 
 *476
 
 It is not even claimed that there is any provision of law enacted limiting the use of the initiative as laid down in the majority opinion. The provision of the Constitution above quoted deliberately provides for the initiative
 
 and
 
 referendum in municipalities, not only without limiting the subjects upoi: which the initiative may be employed, but also specifically stating that the initiative and referendum powers are reserved “on all questions which such municipalities may now or hereafter bt authorized by law to control by legislative action.”
 

 That the initiated ordinance covered a question which the municipality was authorized to “control by legislative action,” and hence comes within the protection of the constitutional provision, cannot be doubted. Nor can it be doubted that the council itself could have passed the measure initiated by the people of Fremont, although it conflicted with the initial ordinance upon the same subject. It could have done this,' even though the second ordinance was so inconsistent with the first as to amount to a repeal.
 

 It could not be seriously urged that the enactment by a city council of an ordinance contradictory to an ordinance previously enacted is invalid because of the fact that the council in its later ordinance has taken positive legislative action instead of having repealed the previous ordinance.
 

 The whole doctrine of repeal by implication is grounded upon the theory that a subsequent legislative enactment which deals with the whole subject-matter of a former enactment, and is evidently intended as a substitute therefor, although it contains no express repealing clause, operates as a repeal
 
 *477
 
 of the former enactment. And while repeal by implication is not favored, an act may be repealed by implication as well as in direct terms.
 

 “This doctrine rests on the ground that the last expression of the legislative will ought to' control. If an act is so repugnant to,, or so contradictory of, or so irreconcilably in conflict with, a prior act that the two acts cannot be harmonized in order to effect the purpose of their enactment, the later act operates, without any repealing clause, as a repeal of the first to the extent of the irreconcilable inconsistency.” 25 Euling Case Law, page 914, Section 167.
 

 Cases which apply this doctrine in the state of Ohio are
 
 Goff
 
 v.
 
 Gates,
 
 87 Ohio St., 142, 100 N. E., 329,
 
 State ex rel. Enos, Pros. Atty.,
 
 v.
 
 Stone,
 
 92 Ohio St., 63, 110 N. E., 627,
 
 State ex rel. C. C., C. & St. L. Ry. Co.
 
 v.
 
 Creamer, Treas.,
 
 83 Ohio St., 412, 94 N. E., 831,
 
 Thorniley, Aud.,
 
 v.
 
 State, ex rel. Dickey, Pros. Atty.,
 
 81 Ohio St., 108, 90 N. E., 144, and numerous other decisions which need not be cited.
 

 Neither can it be questioned that the same doctrine of repeal by implication applies to ordinances. The books are replete not only with statutes conflicting with previous statutes upon the same subject, but also with ordinances conflicting with previous ordinances upon the same subject. The validity of these subsequent conflicting statutes and ordinances has never been questioned upon the ground that a legislative body cannot nullify a statute or an ordinance without first repealing it. But if an ordinance upon the same subject as a previous
 
 *478
 
 ordinance, and contradictory thereto, which does not specifically repeal the first ordinance, is valid, even though it constitutes an effort to nullify legislative action without the orderly form of repeal, then surely under the precise phrasing of Article II, Section
 
 If,
 
 of the Ohio Constitution, the people of Fremont can, through the initiative, enact a measure conflicting with legislation previously enacted by the council, even though they do thus nullify the action of the council, provided only that the question upon which they enact such an initiative ordinance is within the power of the municipality to control by legislative action.
 

 Article II of the Ohio Constitution, under which this question arises, deals with “Legislative Power.” That is the heading of the article, and the caption of the first section is “In Whom Power Vested.” In the first section of Article II the initiative and referendum are' immediately described as constituting legislative power. Now the only constitutional limitation upon that power, as reserved, is that “the limitations expressed in the Constitution, on the power of the General Assembly to enact laws, shall be deemed limitations on the power of the people to enact laws.” While this limitation is contained in Article II, Section 1, which does not relate to initiative ordinances, since that part of Article II, Section 1, which we are discussing was enacted at the same time as Article II, Section
 
 If,
 
 it will be considered
 
 in pari materia
 
 therewith, and construed with it. In Article II, Section
 
 If,
 
 the initiative and referendum, as extended to municipalities, are described expressly as “initiative and referendum powers,”
 
 *479
 
 and evidently refer back to the phrase “legislative power” used in both the title and content of Article II, Section 1. In other words, the power exercised in the enactment of this initiative ordinance was legislative power.
 

 The extensive and unlimited nature of legislative power is excellently described in 6 Ruling Case Law, “Constitutional Law,” page 153, Section 152, as follows:
 

 “It is a recognized principle of constitutional law that, except where limitations have been imposed by the federal or state Constitution, the power of the Legislature is unlimited and practically absolute, and that, therefore, it covers the whole range of legitimate legislation. This power has been described as being the power to make, alter, and repeal laws, and the general rule is that if limitations upon its exercise are not found in the Constitution, they do not exist, except in so far as all Constitutions may be said to be limited. As a rule, therefore, and speaking generally, a Legislature may db what the state or federal Constitution does not prohibit.”
 

 The general proposition laid down in this authority is too well established to require citation.
 

 Now it is this municipal legislative power, unlimited by statute, unlimited by the Ohio Constitution except as above quoted, which this court holds cannot be exercised upon a subject upon which the council has previously acted to the contrary. Thus this holding constitutes a drastic invasion of the unlimited legislative power reserved to the people of municipalities by the amendments of 1912.
 

 The seriousness of this decision to the people of
 
 *480
 
 Fremont is evident when we consider that, under the holding of this court in the case of
 
 State ex rel. Durbin
 
 v.
 
 Smith, Secretary of State, supra,
 
 as followed and extended to municipal ordinances in a recent ruling of this court upon motion, the people of Fremont could not have held a referendum upon the ordinance passed by council simply because that ordinance declared an emergency to exist, although, in fact, it may be questioned whether such emergency existed. It would therefore have been absolutely futile for the people of Fremont to endeavor to file a referendum petition upon the ordinance in question.
 

 Since, further, this court has held that neither the legislative declaration of the existence of an emergency nor the relation to the public peace, health and safety of the legislative declaration of the reasons for the necessity of the enactment is subject to judicial inquiry, the holding in the
 
 Durbin case, supra,
 
 places it within the power of the legislative authority to forestall a referendum, and the decision in the instant case denies the people the right to repeal an odious ordinance by initiative action. Thus the entire initiative and referendum provision of Section
 
 If
 
 of Article II of the Ohio Constitution has been rendered completely nugatory by the simple expedient of declaring an emergency where the popular will is not entirely in harmony with the legislative proposal.
 

 It was not the intention of the framers of the constitutional amendments of 1912 when they provided for the initiative in municipalities that the subjects upon which the initiative could be exercised
 
 *481
 
 should be limited to those not subject to the referendum. The very wording of Article II, Section 1/, refutes the idea. The Constitutional Convention and the electors who enacted the amendments of 1912 meant the voters themselves to have thé power to enact legislation as a part of the legislative power, subject to no limitations excepting those specifically expressed in the Constitution itself. So far as municipalities are concerned, the enactment of this particular constitutional provision meant that the electors in a municipality should be at least as high in legislative power as their servants, the council, whom they elect, and whose salaries they pay. But the present holding puts the municipal electors far below their council in legislative power.
 

 Since this court has held in the case of
 
 State ex rel. Durbin
 
 v.
 
 Smith, Secretary of State, supra,
 
 and inferentially held in the case of
 
 Menke
 
 v.
 
 Jackson
 
 (No. 19536), in which a motion to certify the record was refused upon March 16, 1926, that if a statute or an ordinance contains an emergency clause the legislative declaration of the existence of an emergency is not subject to judicial review, the effect of this holding, in a case where the ordinance enacted contains an emergency clause, is to put it in the power of a willful group of legislators to defeat both the initiative and the referendum by the simple expedient of such declaration.
 

 Thus by judicial decision the Constitution is amended and the voters of every municipality in the state are shorn of a most substantial share of
 
 *482
 
 the legislative power deliberately conferred upon them by the amendments to the Constitution enacted in 1912.
 

 Marshall, C. J., concurs in the dissenting opinion.